**SO ORDERED.**

**SIGNED this 19th day of March, 2008.**

_____
**LEIF M. CLARK**
**UNITED STATES BANKRUPTCY JUDGE**
_____

# United States Bankruptcy Court

**Western District of Texas**
**San Antonio Division**

| | |
|---|---|
| IN RE | BANKR. CASE NO. |
| JAY-REYNA HOMES & CONSTR., INC., D/B/A JAY REYNA HOMES, INC. | 07-51038-LMC |
| *DEBTOR* | CHAPTER 7 |
| JOHN PATRICK LOWE, CHAPTER 7 TRUSTEE | |
| *PLAINTIFF* | |
| V. | ADV. NO. 07-5093-LMC |
| JEANETTE JAY | |
| *DEFENDANT* | |

### ORDER DENYING MOTION TO RECONSIDER ORDER DENYING MOTION TO VACATE CLERK'S ENTRY OF DEFAULT

Before the court is the defendant's motion for the court to reconsider its prior order declining to set aside the Clerk's entry of default against the defendant. The defendant is a debtor in an

unrelated bankruptcy case.[1]  The plaintiff is the chapter 7 trustee in the related bankruptcy case.[2]

The defendant commenced her bankruptcy case in the interim period between the commencement

of this adversary proceeding and the deadline to file her answer.  Due, at least in part, to some

confusion about the effect of the intervening bankruptcy filing, the defendant failed to file her

answer.[3]  On prompting from the clerk of court, the plaintiff requested an entry of default, and the

Clerk's Office entered default against the defendant.  After the entry, the defendant finally filed an

answer, over five months after service of summons.  The defendant then asked this court to set that

entry aside, based solely on a timing argument apparently derived from a misreading of section 108

of the Code.  This court denied that request, explaining that the defendant's evident reliance on

Section 108 was misplaced.  Now before the court is the defendant's motion for the court to

reconsider that order.  For the reasons stated, reconsideration is denied.

## Background

At the time of the commencement of this adversary proceeding, the defendant was not herself

in bankruptcy.  However, some time after the plaintiff filed and served his complaint, and days

before an answer was due, the defendant (in her individual capacity) commenced her own chapter

7 bankruptcy case.  By virtue of the automatic stay in the defendant's individual case, this adversary

proceeding was stayed.  Several months later, the plaintiff trustee obtained relief from the automatic

stay in the defendant's individual bankruptcy case, and the stay lifted to allow the plaintiff to

---

[1] Bankr. Case No. 07-52413-lmc.

[2] The debtor in the related bankruptcy case is a corporate entity controlled by the defendant.  She and her husband did not file their individual bankruptcy case until months after the related bankruptcy case commenced.

[3] As discussed further below, the defendant believed that she had an additional 30 days to answer the complaint after the stay from her individual bankruptcy case lifted as to the plaintiff.

continue this adversary proceeding.

There is a bit of confusion and contention about the effect of the order lifting the stay on the defendant's deadline to file her answer. The defendant contends that the order modifying the stay did not clarify when an answer would be due.[4] In all events, no answer was filed.[5] The plaintiff

---

[4] She further contends that the plaintiff failed to send her attorney a form of the order prior to this court's entering that order, but that argument is clearly a red herring. For reasons more fully explained below, it is relevant *why* the defendant did not file a timely answer to the complaint, but the court is not persuaded by the defendant's reliance on the plaintiff to set a new deadline for answering the complaint. The defendant could have requested a new deadline on the record during the lift stay hearing or filed a pleading requesting an extension of time to file an answer. In any event, the Fifth Circuit has ruled that a party is not excused from taking action with respect to an order solely because it was not served with a copy of that order (whether by the court or by a party). *See Latham v. Wells Fargo Bank, N.A..,* 987 F.2d 1199, 1201-02 (5th Cir. 1993) (citing *Jones v. Estelle,* 693 F.2d 547, 549 (5th Cir. 1982), *cert. denied* 460 U.S. 1072, 103 S.Ct. 1528, 75 L.Ed.2d 950 (1983) (holding that parties have "a duty to inquire periodically into the status of their litigation" and that a parties failure to receive notice of an order did not excuse the party from complying with the deadlines set by applicable rules); *see also McKethan v. Tex. Farm Bureau,* 996 F.2d 734, 740 (5th Cir. 1993), *cert. denied* 510 U.S. 1046, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994) ("Simply because counsel did not receive the reassignment order does not excuse his decision to assume, without notice from the court, that the setting had been changed.").

[5] There is some legitimate confusion regarding when an answer was due on the facts of this case, though it was clearly due much earlier than defendant's proposed deadline or defendant's actual eventual answer. When the defendant filed her bankruptcy case, twenty-six of the 30 days allowed for filing an answer to this preference suit had already run. Only four days remained in which to file an answer. The preference action was, from the point of view of the defendant's bankruptcy case, stayed. The action was, again from that point of view, a claim against the estate (albeit an *in rem* claim). The party with standing to respond to the claim, then, was not the named defendant but the named defendant's trustee in bankruptcy (Helen Schwartz was the trustee appointed to the case). Ms. Schwartz filed a "no asset" report in the defendant's case on December 17, 2007, thereby abandoning any interest in the property that was the subject of the plaintiff's preference suit. As of that date, then, the defendant's bankruptcy estate had no further interest in this litigation: it did not count as claims adjudication because the action was brought solely as an *in rem* claim, and it did not involve property to be administered by the defendant's bankruptcy estate because it had been abandoned by virtue of the no asset report. Ms. Schwartz is well aware of the Mr. Lowe's pursuit of specific property alleged to be in the hands of the debtor defendant, but apparently has no interest in administering that property even if Mr. Lowe is fortunate enough to recover it. Only the automatic stay continued to prevent Mr. Lowe from pursuing his *in rem* claim against the debtor, and that impediment was removed when the court entered an order lifting the automatic stay as to this litigation on January 8, 2008.

The foregoing recitation of the procedural history is meant to underline this simple point: section 108(b) has no relevance to the deadline for the debtor defendant to file her answer. That section at best served only to toll the period of time within which *Helen Schwartz,* as *trustee,* could answer Mr. Lowe's preference suit (assuming she ever had a duty to answer at all, a matter that is in some doubt because, from Ms. Schwartz' point of view, the lawsuit was just another claim against the estate, and trustees do not normally concern themselves with filing answers to live lawsuits that constitute little more than claims against the estate). Section 108(b) does not serve to toll any limitations *vis-a-vis* the debtor herself in her individual capacity. Nor does any other subsection of section 108. By the same token, however, the debtor could not have had standing to respond to the lawsuit any earlier than December 17, 2007, the date the trustee effectively abandoned the property (by filing a no-asset report) that was the subject of this lawsuit.

Because section 108 had no application to the debtor, the debtor's argument that she had "an additional 30 days following the entry of the order lifting the automatic stay" did not (and does not) fly. When the bankruptcy was filed, she had four more days before the answer was due. Once Ms. Schwartz abandoned any interest in the property the subject of this preference suit, the debtor defendant once again had standing to respond to Mr. Lowe's lawsuit. A new

-3-

requested an entry of default and moved for judgment by default.  (Docs. Nos. 7, 8).  The Clerk

entered default against the defendant the next day on January 31, 2008.  (Doc. #9).  Only after the

Clerk entered default — one day after, on February 1, 2008, to be precise — did the defendant

finally file an answer to the plaintiff's complaint. (Doc. #10).  On that same day, the defendant also

responded to the plaintiff's motion for default judgment, (Doc. #11) and filed a Motion to Vacate

Clerk's Entry of Default.  (Doc. #12).  The only ground asserted in her first motion as cause to set

aside the entry of default was the contention that the time for filing an answer had not run because,

according to the defendant, "[t]hirty days had not passed since the Order of January 8, 2008 (lifting

the automatic stay) when an answer would have been due."  Motion to Vacate Clerk's Entry of

Default at ¶ 5.  This court denied the motion to vacate, ruling that the defendant had misread section

108 of the Bankruptcy Code.  *See* Order Denying Defendant's Motion to Vacate Clark's Entry of

Default (the "Order") (noting that section 108(b), which provides an extension of time to file

pleadings in matters before the bankruptcy court, is a special provision which works only in favor

of the trustee, not the debtor) (Doc. #15).  The defendant asserted no other ground for setting aside

---

30 day clock would not have started because section 108 does not toll deadlines running *against the debtor*.  Thus, her answer would have been due December 21, 2007, four days after the property was no longer estate property.  Even if she enjoyed the benefit of the automatic stay (a colorable argument), her answer would have been due four days after the stay was lifted on January 8, 2008.  The clerk did not enter default against her until January 31, 2008.  That default was entered only after the clerk's office prompted Mr. Lowe to seek a default (the clerk was monitoring the adversary proceeding but was not taking into account the defendant's own bankruptcy filing — and that was the right thing for the clerk to do, because the clerk is not supposed to practice law).  Only after the default was entered did the defendant finally file an answer on February 1, 2008.  One can only guess how long the defendant would have waited to file an answer had the clerk not prompted somebody to do something in this case.

　　　Perhaps the debtor was confused over when an answer was due.  In all candor, however, the court cannot see how any reasonable interpretation of the law could have given the defendant a new 30 day period after the entry of the order lifting stay.  Even if section 108(b) provided assistance for the defendant, that section does not speak of a new 30 day period.  In all events, the defendant took no steps to file an answer, to extend the time to file an answer, or even to ask the court to rule on when an answer would be due (a good time to have done that might have been at the hearing on the motion for relief from stay, which the defendant's attorney attended).

the entry of default.[6]  The defendant now files a Motion to Reconsider.[7]  The Motion was filed within ten days of this court's prior Order,[8] and the court therefore will treat the Motion under the standards of Rule 59, made applicable to this proceeding by Bankruptcy Rule 9023.  *See Abraham v. Aguilar (Matter of Aguilar),* 861 F.2d 873, 875 (5th Cir. 1989); *Stangel v. U.S. (In re Stangel),* 68 F.3d 857, 859 (5th Cir. 1995).

**<u>Discussion</u>**

Rule 59 provides the means to seek reconsideration of a court's order or judgment. However, a movant may not normally raise arguments or evidence which *could have and should have* been presented to the court before the order was entered.  *See Retired Chicago Police Ass'n v. City of Chicago,* 76 F.3d 856, 867 (7th Cir. 1996) (citing *Green v. Whiteco Indus., Inc.,* 17 F.3d 199, 202 n.5 (7th Cir. 1994)); *see also Rosenzweig v. Azurix Corp.,* 332 F.3d 854, 863-64 (5th Cir. 2003).  Judge Richard Posner, writing for the Seventh Circuit, probably said it best:  "It is not the purpose of allowing motions for reconsideration to enable a party to complete presenting his case after the court has ruled against him."  *Frietsch v. Refco, Inc.,* 56 F.3d 825, 828 (7th Cir. 1995) (Posner, J.).  Judge Posner's comments notwithstanding, a court has complete discretion to amend its own orders to prevent a manifest error of law.  *See Waltman v. Int'l Paper Co.,* 875 F.2d 468, 473 (5th Cir. 1989) (citing *Keene Corp. v. Int'l Fidelity Ins. Co.,* 561 F. Supp. 656, 665 (N.D. Ill. 1982),

---

[6] Because the defendant's response to the motion for default judgment contained the same flawed argument and proffered no other ground to deny judgment by default, the court entered judgment in favor of the plaintiff.  (Doc. #19).

[7] *See* Motion to Reconsider Order Denying Defendant's Motion to Vacate Clerk's Entry of Default or in the Alternative Motion for Enlargement of Time to File Answer, Nun Pro Tunc [sic] (the "Motion" or "Motion to Reconsider") (Doc. #17).

[8] The Order was entered on the docket on February 21, 2008.  Ten days from that day would have been Sunday, March 2, 2008.  The defendant filed the Motion on the following Monday, March 3, 2008.  Because the tenth day after the Order fell on a Sunday, the defendant's Motion to Reconsider is timely for the purposes of Rule 59.  *See* Fed. R. Bankr. P. 9006.

-5-

*aff'd by* 735 F.2d 1367 (7th Cir. 1984)).

In the Motion to Reconsider, the defendant asks the court to reconsider its Order declining to set aside the entry of default. The only ground asserted in her initial motion to set aside the default was that she believed she had an additional 30 days from the order lifting the automatic stay to answer the plaintiff's complaint. In her Motion to Reconsider, the defendant re-urges the contention that her intervening bankruptcy case and automatic stay at least caused some confusion as to the new deadline to answer the complaint in this adversary proceeding. *See* Motion at ¶ 8. The defendant then notes that she filed an answer on February 1, 2008, one day after the Clerk's Entry of Default against her. *Id.* at ¶ 9. While it is unclear precisely what arguments the defendant is making in her Motion, it appears that she is at the least attempting to show good cause for setting aside an entry of default under Rule 55(c).[9] *See id.* at ¶ 16 (quoting *In re C. Lynch Builders, Inc.,* 2007 WL 2363029 at *4 (Bankr. W.D. Tex. Aug. 15, 2007)).

The "good cause" argument could have been, but was not, raised in the defendant's initial motion. It is not the duty of a court to look beyond the language of a pleading to consider all possible arguments which a party might have made. The court does not represent the litigant. The defendant had the opportunity to show good cause for setting aside the entry of default in her initial motion. She should have raised Rule 55(c) at that time. Instead she relied solely on a flawed legal argument which the court rejected (and rejects again to the extent that it is raised again). Indeed, the argument raised in the original motion to set aside *also* did not cite to any authorities for its support. Now that she knows the court's ruling with respect to that argument, she now seeks by this

---

[9] The motion never cites to Rule 55(c) as such. The only real clue that this might be the rule upon which the defendant is relying is in the defendant's block quotes from a decision of this court that happens to be discussing Rule 55(c). The pleading does recite the factors used by the Fifth Circuit in applying Rule 55(c), though without reference to the rule itself.

new pleading a second bite at the apple to raise what is apparently a Rule 55(c) argument that should have been urged in the first motion.[10]

The court is within its discretion in overruling the Motion to Reconsider and allowing the entry of default to stand. Such a ruling is supported by both Rule 59 and by applicable case law. *See Frietsch v. Refco, Inc.*, 56 F.3d 825, 828 (7th Cir. 1995) (Posner, J.). Further, the plaintiff would support such a decision because, from his point of view, it is both unfair and impracticable to expect the plaintiff to respond to arguments which were never truly urged by the defendant in the first place. The time to ring that bell was in the initial motion.

The court is well aware of the Fifth Circuit's general policy favoring decisions on the merits over default judgments based on a defendant's technical failure to follow timing rules. *See Lacy v. Sitel Corp.,* 227 F.3d 290, 292 (5th Cir. 2000) ("[F]ederal courts should not be agnostic with respect to the entry of default judgments, which are 'generally disfavored in the law' and thus 'should not be granted on the claim, without more, that the defendant had *failed to meet a procedural time requirement.*") (quoting *Mason & Hanger—Silas Mason Co. v. Metal Trades Council,* 726 F.2d 166, 168 (5th Cir. 1984)). But the Fifth Circuit is also supportive of the proposition that the time to urge such arguments is not generally on a motion to reconsider, after having failed to raise the obvious precedents the first time around. *See Turner v. Baylor Richardson Med. Center,* 476 F.3d 337, 344-45 (5th Cir. 2007) ("Because Turner did not raise the joint-employer theory of liability until her motion for new trial, the district court did not err in deeming it waived."); *see also Simon v. United States,* 891 F.2d 1154, 1159 (5th Cir. 1990) ("These [Rule 59(e)] motions cannot be used to raise

---

[10] The defendant's motion consists almost entirely of block quotes copied and pasted from a few opinions. While the court does not take issue with the use of block quotes, it would have been more helpful had the defendant provided some context for those quotes. Instead, the defendant selected three opinions, one of this court, discussing different legal standards and pasted several lines of each opinion as her purported "arguments and authorities."

arguments which could, and should, have been made before the judgment issued. Moreover, they cannot be used to argue a case under a new legal theory.") (quoting *F.D.I.C. v. Meyer,* 781 F.2d 1260, 1268 (7th Cir. 1986)).  The defendant should have been sufficiently aware of the case law and the rules to properly present those authorities in her original motion to vacate the entry of default.  She chose instead to offer an unsupported argument that ultimately failed.  Were the court to allow this "second bite" now, *see Sequa Corp. v. GBJ Corp.,* 156 F.3d 136, 144 (2d Cir. 1998), it would be inflicting additional delay and litigation cost on a plaintiff chapter 7 trustee who, at this point in time, is pursuing this litigation without compensation.  Enough excess cost and delay has already been occasioned in this adversary.  By this decision, it is the intention of the court to bring this matter to an end.

The motion to reconsider the order denying motion to vacate entry of default is denied.  The default stands.  The default judgment also stands.

# # #